1   Sanjay Bhandari (Cal. Bar No. 181920)
    McNamara Smith LLP
2   655 West Broadway, Suite 1600
    San Diego, California 92101
3   Telephone: 619-269-0400
    Facsimile:  619-269-0401
4   Email:  sbhandari@mcnamarallp.com

5   *Attorneys for Shiv D. Kumar*

6

7

8                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9                         OAKLAND DIVISION

10

11  UNITED STATES OF AMERICA,           Case No. 4:17-cr-00114-JST

12                      Plaintiff,      **MOTION TO CONTINUE SENTENCING,**
                                        **OR IN THE ALTERNATIVE, FOR**
13          v.                          **SPECIFIED RELIEF**

14  SHIV D. KUMAR,                      JUDGE:    Hon. Jon S. Tigar
                                        CTRM:     3, 3rd Fl. (Oakland)
15                      Defendant.      DATE:     November 17, 2017
                                        TIME:     9:30 a.m.
16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

Page

I.      INTRODUCTION ........................................................................................................ 1
II.     Notes Regarding This Filing ..................................................................................... 3
III.    Statement of Facts ...................................................................................................... 3
        A.      Procedural History .......................................................................................... 3
        B.      Mr. Kumar's Background ............................................................................... 5
IV.     Argument ..................................................................................................................... 6
        A.      Mr. Kumar's Right to Effective Counsel Was Violated at Sentencing .... 6
                1.      Mr. Kumar Has a Constitutional Right to Effective, Conflict-Free
                        Counsel .............................................................................................. 6
                2.      Deprivation of the Right to Counsel at Sentencing is Reversible
                        Error .................................................................................................. 8
                3.      Mr. Cannon's Actual Conflict of Interest Produced Adverse
                        Effects ................................................................................................ 9
        B.      Prior Counsel Ineffectively Caused an Invalid Rule 11 Hearing ............. 9
                1.      Due Process Requirements ............................................................. 9
                2.      The Element of Intent was Misstated at the Rule 11 Hearing .... 10
                3.      Without an Interpreter, Mr. Kumar's Waivers were Invalid ...... 12
                4.      The Court's Voluntariness Inquiry was Deliberately Thwarted .... 13
V.      Government Breaches of the Plea Agreement ....................................................... 14
VI.     Improper Sentencing Arguments .......................................................................... 16
VII.    CONCLUSION ......................................................................................................... 18

1

# Table of Authorities

2

**Cases**

3

*Bonin v. California,*
4      494 U.S. 1039 (1990) ........................................................................................................ 7

*Boykin v. Alabama,*
5      395 U.S. 238 (1969) ..................................................................................................... 9, 10

6

*Chapman v. California,*
     386 U.S. 18 (1967) ........................................................................................................... 7
7

*Cheek v. U.S.,*
8      498 U.S. 192 (1991) ....................................................................................................... 11

9

*Cuyler v. Sullivan,*
     446 U.S. 335 (1980) ..................................................................................................... 7, 8
10

*Glasser v. United States,*
11      315 U.S. 60 (1942) ........................................................................................................... 7

12

*Henderson v. Morgan,*
     426 U.S. 637 (1976) ....................................................................................................... 11
13

*Lockhart v. Terhune,*
14      250 F.3d 1223 (9th Cir. 2001) ......................................................................................... 9

15

*Maiden v. Bunnell,*
     35 F.3d 477 (9th Cir. 1994) ............................................................................................. 8
16

*McCarthy v. United States,*
17      394 U.S. 459 (1969) ............................................................................................... 9, 10, 11

18

*Miller v. Alagna,*
     138 F. Supp. 2d 1252 (C.D. Cal. 2000) .......................................................................... 9
19

*Parke v. Raley,*
20      506 U.S. 20 (1992) ........................................................................................................... 9

21

*Powell v. Alabama,*
     287 U.S. 45 (1932) ....................................................................................................... 7, 8
22

*Sanders v. Ratelle,*
23      21 F.3d 1446 (9th Cir. 1994) ........................................................................................... 8

24

*Strickland v. Washington,*
     466 U.S. 668 (1984) ................................................................................................. 7, 8, 9
25

*United States ex rel. Negron v. New York,*
26      434 F.2d 386 (2d Cir. 1970) .......................................................................................... 13

27

*United States v. Bowie,*
     892 F.2d 1494 (10th Cir. 1990) ....................................................................................... 8

28

*United States v. Brooksby,*
    668 F.2d 1102 (9th Cir. 1982) ................................................................................................ 11

*United States v. Chronic,*
    466 U.S. 648 (1984) ............................................................................................................ 6

*United States v. De La Fuente,*
    8 F.3d 1333 (9th Cir. 1993) ............................................................................................. 15

*United States v. Dominguez-Benitez,*
    542 U.S. 74 (2004) ........................................................................................................... 10

*United States v. Elliot,*
    463 F.3d 858 (9th Cir. 2006) ........................................................................................... 7

*United States v. Gaitan-Ayala,*
    No. 07-00268-01 JMS, 2008 U.S. Dist. LEXIS 32293 (D. Haw. Apr. 17, 2008) .............. 9

*United States v. Gandia-Maysonet,*
    227 F.3d 1 (1st Cir. 2000) .............................................................................................. 12

*United States v. Ingram,*
    721 F.3d 35 (2d Cir. 2013) ............................................................................................. 16

*United States v. Johnson,*
    1 F.3d 296 (5th Cir. 1993) .............................................................................................. 10

*United States v. Lara,*
    690 F.3d 1079 (8th Cir. 2012) ........................................................................................ 15

*United States v. Longoria,*
    133 F.3d 975 (9th Cir. 1997) ..................................................................................... 10, 11

*United States v. Manzo,*
    675 F.3d 1204 (9th Cir. 2012) ........................................................................................ 15

*United States v. Migliaccio,*
    34 F.3d 1517 (10th Cir. 1994) .......................................................................................... 8

*United States v. Miskinis,*
    966 F.2d 1263 (9th Cir. 1992) .......................................................................................... 8

*United States v. Navarro,*
    817 F.3d 494 (7th Cir. 2015) .......................................................................................... 16

*United States v. Pena,*
    314 F.3d 1152 (9th Cir. 2003) ........................................................................................ 10

*United States v. Rewis,*
    969 F.2d 985 (11th Cir. 1992) .................................................................................... 14, 15

*United States v. Rodriguez Rodriguez,*
    929 F.2d 747 (1st Cir. 1991) ............................................................................................ 8

*United States v. Vonn,*
    535 U.S. 55 (2002) ........................................................................................................... 10

*United States v. Wells,*
    394 F.3d 725 (9th Cir. 2005) ............................................................................. 8

*United States v. Whitecotton,*
    142 F.3d 1194 (9th Cir. 1998) ....................................................................... 17

*United States v. Yamashiro,*
    788 F.3d 1231 (9th Cir. 2015) ......................................................................... 8

*Wheat v. United States,*
    486 U.S. 153 (1988) ......................................................................................... 7

*Wood v. Georgia,*
    450 U.S. 261 (1981) ......................................................................................... 7

**Statutes**

18 U.S.C. § 3663 ...................................................................................................... 18

26 U.S.C. § 7201 ...................................................................................................... 11

26 U.S.C. § 7203 ...................................................................................................... 11

26 U.S.C. § 7206 ...................................................................................................... 11

26 U.S.C. § 7207 ...................................................................................................... 11

**Other Authorities**

9th Cir. Model Crim. Jury Instr. 9.42 ..................................................................... 11

**Treatises**

*Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing:*
    *A Modest Solution for Reforming a Fundamental Flaw,*
    104 J. Crim. L. & Criminology 489 (2014) .................................................. 16

*Judgment Under Uncertainty: Heuristics and Biases,*
    185 Science 1124 (1974) .............................................................................. 16

# I.

## INTRODUCTION

Defendant Shiv Kumar respectfully requests that the Court continue the sentencing hearing to allow for proper briefing of the significant constitutional and sentencing issues outlined below. In the alternative, if the Court declines the motion for continuance and proceeds with sentencing, to preserve his objections for the record, Mr. Kumar moves the Court to provide the relief specified below for the violations and errors discussed below, all of which arise as a result of the ineffective assistance of prior counsel.

*First,* Mr. Kumar believes that he is entitled to a new sentencing hearing to cure ineffective assistance arising from the actual conflict of interest of his prior defense attorney, Chris Cannon. Mr. Cannon concurrently represented both Mr. Kumar and his children Reena and Sandeep, who were threatened with prosecution on related facts if Mr. Kumar did not accept the government's demands. Although the rules of professional conduct require a written waiver of conflict of interest in such circumstances, and caselaw requires counsel to bring conflicts to the Court's attention for its independent assessment of whether the Sixth Amendment would allow a waiver, Mr. Cannon never obtained a written waiver, and never informed the Court of the conflict. While laboring under this conflict, Mr. Cannon failed to make several arguments (see below) that would have benefitted Mr. Kumar, but would have exposed Mr. Cannon's other clients to risk of government retribution. The resulting Sixth Amendment violation would require reversal of any sentence predicated on the work of Mr. Cannon.

*Second,* Mr. Kumar believes that his guilty plea does not provide a constitutionally sound basis for a sentencing proceeding, again arising from ineffective assistance. As a matter of due process, Mr. Kumar's guilty plea was rendered not knowing, intelligent, or voluntary as a result of three significant problems with the Rule 11 colloquy in this case. First, Mr. Kumar was misinformed about the intent element of the charge against him, no counsel corrected the error, and the record reflects that the error is significant on the facts of this case. Second, the Court was thwarted in its detailed and laudable attempt to confirm the voluntariness of Mr. Kumar's waivers of rights, because government threats and assurances about his family members were

concealed from the Court as a result of specific concealment instructions from conflicted counsel, Mr. Cannon. Third, prior counsel failed to inform the Court of Mr. Kumar's limited English language ability and failed to arrange for an interpreter, resulting in Mr. Kumar not understanding much of the Rule 11 hearing.

*Third,* Mr. Kumar submits that a new sentencing hearing or withdrawal of his plea is required due to government breaches of the plea agreement. To settle an investigation spanning many years with many alleged forms of misconduct, the parties settled on two tax years (2009 and 2010) and one type of conduct (deposits to specified accounts). By raising other allegations and other tax years, resulting in an unduly high offense level, the Government prejudicially breached the plea agreement, and prior conflicted counsel was ineffective in failing to remedy the breach.

*Fourth,* Mr. Kumar believes that he is entitled to a new sentencing hearing because of prior counsel's failure to challenge the government's allegations of misconduct in 2008 and 2012. Presumably because of his divided loyalty, prior counsel failed to point out the logical discrepancies and lack of evidence in the government's claims about those years. The government's 2008 and 2012 allegations do not suffice to prove relevant conduct under the Sentencing Guidelines, and by statute cannot support a restitution order.

In sum, given the seriousness of the ineffective assistance issues discovered by new counsel in a very short time, Mr. Kumar moves the Court, pursuant to the Sixth Amendment, for a reasonable continuance to allow his counsel of choice adequate time to review the record fully and ensure that his case proceeds in a fair and just manner.[1]

---

[1] With regard to adequate time, Mr. Kumar notes that although prior counsel provided some information, gaps in their productions indicate they did not provide their full client files as requested and as ethically required. Mr. Kumar notes that additional violations and additional evidence of violations might well be in the missing materials, and so asks for authorization to issue Rule 17 subpoenas to prior counsel for testimony and documents, both to be sealed and returned solely to Mr. Kumar's counsel prior to the next hearing to avoid waiver on those privileged matters that will not be waived. Mr. Kumar also asks that government counsel provide its emails, letters, and other written records of communications with Mr. Kumar's prior counsel. Because testimony should occur only after the documents are received, in light of the upcoming holidays, and to allow for proper briefing, Mr. Kumar asks that the Court set the next substantive hearing in April 2018. Finally, to avoid privilege waiver and because both government counsel

## II.

## Notes Regarding This Filing

Mr. Kumar notes that as a courtesy to the Court, he sought to avoid this rushed, in the alternative filing. On November 2, 2017, Mr. Kumar's new counsel asked the government to stipulate to a continuance so new counsel could prepare to effectively represent Mr. Kumar. The government declined. After further investigation, on November 13, 2017, Mr. Kumar had another call with the government wherein several of the issues discussed below were outlined to support a second request for a stipulation to a continuance. Government counsel understandably asked for more time to consider the issues, and agreed to a further meeting on November 16 to discuss the matter further. Mr. Kumar is hopeful that on November 17, the parties will be able to present an agreed continuance and course of action on the issues above. Given the importance of the issues and the need to preserve Mr. Kumar's rights, however, this filing was still required.

Mr. Kumar further notes that he does not intend any waiver of the attorney-client privilege or work product protection beyond the limited issues and proof supplied with this motion. He has raised these issues as ineffective assistance of counsel to stay within the range of issues expected by the parties under the plea agreement, but might well make a different determination and present the issues directly if the Court were to order that a broader waiver of privilege was required for adjudication of the issues as ineffective assistance. Thus, not only are the above issues presented in the alternative (first as illustrations of the need for a continuance), but also conditionally, only if the Court agrees that any resulting waiver is limited.

## III.

## Statement of Facts

### A.    Procedural History

On August 8, 2016, government attorneys Jose Olivera and Rebecca Sable met with Shiv Kumar's attorney Roger Patton regarding a criminal investigation that arose from a 2011 IRS audit of Kumar's company A-Paratransit Inc. (API). Declaration of Sanjay Bhandari ("Bhandari

---

and former defense counsel are witnesses to events in issue, Mr. Kumar asks that the Court direct government counsel to refrain from speaking with former defense counsel about this case.

Decl.") ¶ 3. The government told Mr. Patton it was moving towards bringing charges against Shiv, and that family members who worked in API such as his daughter Reena (who kept the books at API) faced possible prosecution. *Id.* The government indicated that if Shiv were to agree to plead guilty, the government would likely not proceed to charge the others, and proposed a tolling agreement to allow Shiv to consider pleading guilty. *Id.* ¶ 3 and Ex. 4.

Based on the clear conflict of interest, Mr. Patton referred Shiv's daughter Reena and others to Chris Cannon. A written engagement agreement dated August 15, 2016 was executed reflecting Mr. Cannon's representation of Reena Kumar, Sandeep Kumar, and API. *Id.* ¶ 3 and Ex. 5. Reena and Sandeep were also provided and signed an advisement and waiver of conflicts of interest that might arise between them. *Id.*

Mr. Patton is currently retired and stopped billing for this case in March 2017. *Id.* At some point before Mr. Patton retired, Mr. Cannon began directly representing Shiv, while still representing the clients whose conflicting interests he was brought in as independent counsel to represent: Reena, Sandeep, and API. *Id.* In violation of California Business and Professions Code section 6148, Mr. Cannon did not provide Mr. Kumar a written engagement agreement. In violation of Rule 3-310(C) of the California Rules of Professional Conduct, Mr. Cannon did not provide either Shiv or any of Mr. Cannon's existing clients (Reena, Sandeep, and API) a written advisement and proposed waiver of conflicts of interest between Shiv and the others. *Id.* Mr. Cannon never terminated his attorney-client relationship with Reena, Sandeep, or API. *Id.* Rather, during the entire sentencing phase of this case, Mr. Cannon concurrently represented Shiv, Reena, Sandeep, and API. Although removing the threat of prosecution of his family was clearly Shiv's primary motivation to plead guilty, the government's plea agreement contained no promise to not bring charges against Reena, Sandeep, or API, leaving them at risk throughout sentencing. *Id.* at Ex. 3.

Mr. Patton represented Shiv at the March 2017 Rule 11 hearing, *see id.* Ex 1 at 1, but he retired shortly thereafter and Mr. Cannon handled Shiv's case as sole counsel of record throughout sentencing. The Court was never informed that Mr. Cannon concurrently represented multiple clients with conflicting interests in the case before the Court. Nor was the Court ever

1   informed of the representations that if Mr. Kumar agreed to this deal, the Government would not

2   proceed with charges against his family members.

3   **B.    Mr. Kumar's Background**

4          Because the issues raised herein involve questions of Mr. Kumar's ability to understand

5   subtle issues of tax mens rea, conflict of interest, and side assurances versus legally enforceable

6   promises, a brief discussion of Mr. Kumar's background, education, and English language ability

7   are in order.

8          Mr. Kumar was born the poor son of subsistence farmers in rural India. PSR ¶ 35. His

9   education ended at the eighth grade because he needed to work to support his family. *Id.* Starting

10  out in the U.S. at age 21 pressing shirts for three cents apiece, PSR Sent Rec. at 1, he worked

11  immensely hard and has had tremendous success for someone with limited skills. *Id.* at 1-2. But

12  work ethic and business acumen should not be confused with legal savvy. Even though he has

13  lived in the U.S. for about 40 years, PSR Sent Rec., at 1, Mr. Kumar can still only read and write

14  simple English words. PSR ¶ 44. Both as a result of his limited education and his limited

15  English, Mr. Kumar's ability to understand legal documents and legal discussions is very limited.

16  A professional test of Mr. Kumar's English ability revealed him to be a very basic user of

17  English, with the ability to use basic and familiar words, but without the ability to understand

18  complex or abstract speech or documents, especially outside his area of day to day familiarity.

19  *See* Declaration of Sally Shaffer ("Shaffer Decl.") ¶ 6. During the plea colloquy, for example,

20  when the Court asked Mr. Kumar to articulate what he had done wrong, this is what came out:

21          **The Court:**        Mr. Kumar, why are you guilty of this crime? What did you do
                                   that makes you guilty of this crime?
22          **The Defendant:**   One of the bank account [sic] is not showing onto [sic] the tax
                                   return.
23          **The Court:**        I see. You had a separate bank account that you did not report
                                   on your tax return?
24          **The Defendant:**   Just – that bank account is [sic] opened – and, you know, the –
25                                 [sic] somehow is, you know, just – you know, the – is not on that return on –

26  Bhandari Decl., Ex. 1 (Plea Transcript) at 18:5-13.

27          At this point, the Court stopped Mr. Kumar, and used leading questions to take him

28  through the factual basis. *Id.* at 18-19.

1    During the same Rule 11 colloquy, even though the record is clear that Mr. Kumar's

2   reading and writing is not at all strong, certainly not in English, *see* PSR ¶ 44 and Shaffer Decl.,"

3   when the Court asked him a leading question to affirm his "strong" reading and writing ability,

4   Mr. Kumar (in full Rule 11 robot mode) said yes.

5        **The Court:**        I take it from [your business success] that your reading and
          writing is strong; is that true?
6        **The Defendant:**   Yes, Your Honor.

7   Bhandari Decl., Ex. 1 (Plea Transcript) at 7:2-4.

8    Mr. Kumar also denied that he had had "*any* difficulty reading *any* of the documents in

9   this case," *id.* at 7:7-9 (emphasis added), an answer that could not have been correct in light of

10   the charges and the plea agreement in this case, which are complex even for attorneys who

11   regularly practice federal criminal law. For a basic user of English such as Mr. Kumar, *see*

12   Shaffer Decl., this was clearly not accurate.

13    The Court is no doubt aware of the problem of defendants being primed to robotically

14   respond yes or no in a Rule 11 hearing. The Rule 11 transcript and the PSR are clear evidence

15   this problem infects the entire Rule 11 colloquy. Unfortunately, prior counsel did not inform the

16   Court of Mr. Kumar's limited English language abilities or ask for an interpreter for Mr. Kumar,

17   even though it is quite clear to undersigned counsel (who has proficiency in Hindi and Punjabi,

18   Mr. Kumar's native languages) that Mr. Kumar requires an interpreter to be able to understand

19   either oral or written English of the complexity that will be common in a complex tax

20   prosecution such as this one. Bhandari Decl. ¶ 4; *see generally* Shaffer Decl.

21                                          **IV.**

22                                       **Argument**

23   **A.**      **Mr. Kumar's Right to Effective Counsel Was Violated at Sentencing**

24            1.      Mr. Kumar Has a Constitutional Right to Effective, Conflict-Free Counsel

25    The Sixth Amendment guarantees every criminal defendant the right to the "Assistance

26   of Counsel for his defense." U.S. Const. Amend. VI. This right to counsel has been repeatedly

27   described by the Supreme Court as an essential prerequisite for constitutionally adequate

28   criminal process. *United States v. Chronic*, 466 U.S. 648, 654 (1984) ("Of all the rights that an

1  accused person has, the right to be represented by counsel is by far the most pervasive for it

2  affects his ability to assert any other rights he may have.").[2]

3    The right to assistance of counsel means "the effective assistance of counsel." *Strickland*

4  *v. Washington*, 466 U.S. 668, 686 (1984). To be effective, counsel must of course have sufficient

5  time and resources, *Powell*, 287 U.S. at 71, but even more critically, counsel cannot

6  "simultaneously represent conflicting interests." *Glasser v. United States*, 315 U.S. 60, 70

7  (1942); *Wood v. Georgia,* 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel

8  exists, our Sixth Amendment cases hold that there is a correlative right to representation that is

9  free from conflicts of interest.").[3]

10    Because the right to counsel is only satisfied by effective counsel, the Court has the duty

11  to inquire about conflicts of interest, and the right to reject proposed waivers of conflicts, if a

12  defendant's selected counsel has an actual or potential conflict of interest serious enough to

13  threaten their effectiveness. *Wheat v. United States,* 486 U.S. 153, 159-60 (1988).  Both defense

14  counsel and the government have correlative duties to bring conflicts to the Court's attention so

15  that it may satisfy its Sixth Amendment duties. *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980)

16  ("Defense counsel have an ethical obligation to avoid conflicting representations and to advise

17  the court promptly when a conflict of interest arises during the course of trial."); *United States v.*

18  ———————————

19    [2] *See also Powell v. Alabama,* 287 U.S. 45, 69 (1932) ("Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and

20  knowledge adequately to prepare his defense, even though he had a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be

21  not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and

22  illiterate, or those of feeble intellect."); *Johnson v. Zebrest*, 304 U.S. 458, 467 (1938) ("Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel,

23  compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty."); *Chapman v. California,* 386 U.S.

24  18, 23 (1967) (violation of the right to counsel is so inconsistent with the right to a fair trial that it can never be treated as harmless error).

25    [3] *See also United States v. Elliot,* 463 F.3d 858, 867 (9th Cir. 2006) ("Few aspects of our criminal justice system are more vital to the assurance of fairness than the right to be defended

26  by counsel, and this means counsel not burdened by a conflict of interest." (citations omitted);

27  *Bonin v. California,* 494 U.S. 1039, 1044 (1990) (Marshall, J., dissenting) ("The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when

28  counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial.").

*Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994) ("[W]hen the government is aware of a conflict of interest, it has a duty to bring it to the court's attention and, if warranted, move for disqualification.") (citing *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991)).

2.    Deprivation of the Right to Counsel at Sentencing is Reversible Error

The right to counsel "attaches at all critical stages of a criminal prosecution," including sentencing. *United States v. Yamashiro*, 788 F.3d 1231, 1234-35 (9th Cir. 2015); *Powell*, 287 U.S. at 69 (right to counsel applies "at every step of the proceedings"). A violation of the right to counsel at sentencing is "structural error," requiring automatic reversal without any further showing of prejudice, even absent an objection. *Yamashiro*, 788 F.3d at 1236.

Even if such a deprivation were subject to a showing of prejudice, because of the centrality of the right to counsel, the showing is not the full *Strickland* standard, but only the proof of an "actual conflict" resulting in an "adverse effect." *Cuyler v. Sullivan*, 446 U.S. at 348. An actual conflict occurs when a lawyer represents two parties with different interests as to "a material factual or legal issue or to a course of action." *Id.* at 356 n.3. An adverse effect exists when "the attorney's behavior seems to have been influenced" by the conflict in foregoing a strategy. *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994).[4] The influence need only be shown to "likely,"[5] and the foregone strategy need only be reasonable.[6]

---

[4] *See also United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) ("[T]o prove an adverse effect, the defendant must show that 'counsel was influenced in his basic strategic decisions' by loyalty to another client or former client."); *Maiden v. Bunnell*, 35 F.3d 477, 481 (9th Cir. 1994) ("This showing need not rise to the level of actual prejudice.").

[5] *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) ("To establish that a conflict of interest adversely affected counsel's performance, the defendant need only show that some effect on counsel's handling of particular aspects of the trial was 'likely.'") (quoting *Mannhalt v. Reed,* 847 F.2d 576, 583 (9th Cir. 1988)).

[6] *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990) ("Defense counsel's performance [is] adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests."); *United States v. Rodriguez Rodriguez*, 929 F.2d 747, 751 (1st Cir. 1991) (adverse effect shown where plausible alternative strategy not undertaken due to inherent conflict).

3.     Mr. Cannon's Actual Conflict of Interest Produced Adverse Effects

Both as a matter of the rules of ethics[7] and common sense,[8] Mr. Cannon had an actual conflict of interest when he tried to simultaneously represent multiple parties with different interests in how Mr. Kumar argued at sentencing.  Mr. Cannon's other clients were at risk of government retribution if Mr. Kumar's sentencing positions angered the government.

This conflict of interest manifested itself in the inappropriately deferential positions taken by Mr. Cannon at sentencing. Instead of arguing any of the issues identified below, even after it was clear that the government's errors in its initial calculations required it to recommend a lower offense level, Mr. Cannon quietly stipulated to the government propping up its numbers with improper and unproven allegations. This was in the interests of his other clients, but not in Mr. Kumar's interests. Mr. Kumar was thereby deprived of his Sixth Amendment right to effective counsel.

**B.     Prior Counsel Ineffectively Caused an Invalid Rule 11 Hearing**

1.     Due Process Requirements

For a guilty plea to pass constitutional muster, the record must "affirmatively show" that the defendant waived his constitutional rights knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238 (1969); *Parke v. Raley*, 506 U.S. 20, 29 (1992); *McCarthy v. United States,* 394 U.S. 459, 466 (1969) (if a plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void"). The trial court must ensure that a defendant knows the nature of the charges against him, knows the consequences of pleading guilty, and is

---

[7] "In ascertaining the existence of an actual or serious potential conflict, the court may look in part to the relevant body of professional rules." *United States v. Gaitan-Ayala*, No. 07-00268-01 JMS, 2008 U.S. Dist. LEXIS 32293, at *10 (D. Haw. Apr. 17, 2008); *Strickland*, 466 U.S. at 687-88. Under the California Rules of Professional Conduct, an attorney must obtain the "informed written consent of each client" whenever seeking to represent "more than one client in a matter in which the interests of the clients potentially conflict" or "actually conflict." CRPC 3-310(C)(1)-(2); *Miller v. Alagna*, 138 F. Supp. 2d 1252, 1256 (C.D. Cal. 2000) ("Whether the attorney believes there is no conflict of interest between joint clients is irrelevant."). Mr. Cannon's clear violation of professional standards evidences his providing below-acceptable representation as a constitutional matter.

[8] Because Mr. Cannon "simultaneously represented two clients who were implicated in the same [offense]," he clearly had an actual conflict of interest for Sixth Amendment purposes. *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001).

---

acting free of coercion. *Boykin*, 395 U.S. at 243-44. Rule 11 of the Federal Rules of Criminal Procedure therefore has constitutional dimensions, as its advisements and inquiries help ensure guilty pleas are constitutionally valid. *McCarthy,* 394 U.S. at 465.

The "core concerns" of Rule 11 are "(1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of his plea." *United States v. Johnson*, 1 F.3d 296, 300 (5th Cir. 1993) (en banc); *United States v. Longoria*, 133 F.3d 975, 977 (9th Cir. 1997) (informing the defendant of the nature of the charges is a "core concern" of Rule 11). Failure to satisfy Rule 11's core concerns indicates a constitutionally infirm guilty plea, generally requiring reversal under either the harmless error or plain error standard of review. *United States v. Pena,* 314 F.3d 1152, 1157-58 (9th Cir. 2003).[9]

A mere reading of the indictment or other formal legal description of a charge does not ensure a defendant understands the nature of the charges; rather, a Court must explain the charge free of legal argot to ensure the defendant understands. *Id.* ("A trial judge fails to satisfy his obligation under Rule 11 when, as here, he does not fully inform the defendant of the meaning and application 'of legal argot and other legal concepts that are esoteric to an accused. . . .'") (citation omittted). The March 24, 2017 Rule 11 hearing cannot meet this standard, for two reasons. First, the element of intent was affirmatively misstated. Second, no attempt was made to ensure someone with limited education and limited English could understand.

2.    The Element of Intent was Misstated at the Rule 11 Hearing

Faced with a plea agreement that contained no definition of "willfully," the Court had to draw on its knowledge of other areas of law and explained to Mr. Kumar that acting willfully "means you knew that the [tax] return contained false information." Plea Transcript at 17:8-9. As both prior defense counsel and the government should have jumped in to clarify, in tax cases, "willfully" actually means the voluntary and intentional violation of duties one knows to arise

---

[9] *Cf. United States v. Dominguez-Benitez,* 542 U.S. 74, 80, 83 (2004) (on plain error review, defendant's burden is to show a reasonable probability he would not have pleaded guilty but for the Rule 11 error); *United States v. Vonn*, 535 U.S. 55, 59 (2002) (record on plain error review of Rule 11 errors not limited to plea colloquy).

1    from the tax laws, and about which one does not have any good faith misunderstanding, which

2    would be a full defense even if unreasonable. *Cheek v. U.S.*, 498 U.S. 192, 201 (1991)

3    ("Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government

4    to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and

5    that he voluntarily and intentionally violated that duty."); 9th Cir. Model Crim. Jury Instr. 9.42

6    (Willfully – Defined (26 U.S.C. §§ 7201, 7203, 7206, 7207)) ("In order to prove that the

7    defendant acted "willfully," the government must prove beyond a reasonable doubt that the

8    defendant knew federal tax law imposed a duty on [him] [her], and the defendant intentionally

9    and voluntarily violated that duty. A defendant who acts on a good faith misunderstanding as to

10   the requirements of the law does not act willfully even if [his] [her] understanding of the law is

11   wrong or unreasonable.").

12        But neither defense counsel nor the government ever cleared the error. Indeed, the record

13   contains no evidence that the element of intent was ever correctly defined for Mr. Kumar. Even

14   if one examines the plea agreement itself, or factual basis allegations, which Ninth Circuit

15   precedent has cautioned against doing,[10] there is still no indication that Mr. Kumar was

16   instructed about or understood tax mens rea. *See generally* Plea Agreement (Bhandari Decl. Ex.

17   3) at 2; Plea Transcript (Bhandari Decl. Ex. 1) at 18-20.

18        The gravity of the error is hard to overstate. Mens rea is a crucial element of any

19   intentional crime, and this is even more true in tax cases with their uniquely heightened mens rea

20   requirements. *McCarthy*, 359 U.S.  at 464-65 (reversing tax evasion guilty plea for failure to

21   properly inform defendant of the required intent); *Henderson v. Morgan*, 426 U.S. 637, 639, 645,

22   647 (1976) (failure to inform defendant that intent to cause death was an element of second-

23   degree murder was fatal to the plea); *United States v. Brooksby*, 668 F.2d 1102, 1105 (9th Cir.

24   1982) (in tax prosecution, "notwithstanding that the indictment, the statute, and an instruction on

25   'willfully' were read to the jury, the failure to instruct them that 'willfulness' was an essential

26   element of the crime prejudiced the defendant"). As in *McCarthy*, in this case, the simple

27   _____

28        [10] *Longoria*, 133 F.3d at 977 ("Even if Longoria understood the factual basis for the charge against him, that is not the same as understanding the legal basis for the charge...").

recitation of the words "knowing" and "willful" did not adequately inform Mr. Kumar of the

intent he must have to commit a tax crime.  359 U.S. at 460, 465 (noting indictment's recitation

of knowing and willful standard).  Worse, the record shows that the term "willful" was

affirmatively misstated at the Rule 11 hearing, dissipating any comfort possible from the

shorthand statements of the elements of the offense in the charges and the plea agreement.

*United States v. Gandia-Maysonet*, 227 F.3d 1, 5 (1st Cir. 2000) ("Here, the indictment correctly

tracked the statute, and Gandia agreed that his counsel had discussed the indictment with him;

but whatever force this might have in other situations, the government in the plea agreement and

the judge in the hearing then proceeded *affirmatively* to misstate the scienter element. This

repeated misstatement, if accepted by Gandia, could well have encouraged him to plead guilty.")

(citations omitted).

The government's evidence showed that Mr. Kumar was educated in a village outside the

United States to a very low level, and as a result had virtually no responsibility or dealings with

API's bookkeeping or its tax accountant. Bhandari Decl. Ex. 6. The government's evidence also

showed that API had an alternative motive for keeping revenue off its books, quite apart from

any intent to falsely report its taxes. *Id.*, Ex. 7 (prior civil tax counsel discussing with IRS

revenue agent a desire to not record full revenue because of concerns arising from labor unrest).

In short, the affirmative misstatement of the intent element in this case renders Mr. Kumar's

waivers not knowing or intelligent, and could very well have caused someone with a good faith

defense to have wrongfully pleaded guilty. Under these circumstances, even under the plain error

standard, Mr. Kumar's guilty plea would be found to be constitutionally void, and this case

would be returned for a new trial.

### 3.   Without an Interpreter, Mr. Kumar's Waivers were Invalid

Even if Mr. Kumar was a college professor who spoke perfect English, the guilty plea

would have to be reversed because of the misstatement of intent. The fact that he received a very

limited formal education in a village in India and understands only simple English makes the

problem of his knowing and intelligent waiver of rights even more serious and pervasive. A

defendant who cannot understand legal proceedings cannot knowingly and intelligently waive

rights. *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970). Based on initial assessments by undersigned counsel and a third-party linguist, *see* Bhandari Decl. ¶ 4 and Shaffer Decl., the defense submits that Mr. Kumar lacks sufficient English to intelligently participate in Rule 11 or other legal proceedings without an interpreter. (If the government wishes to contest this, Mr. Kumar asks for sufficient time to prepare expert opinions and other relevant evidence.) Prior counsel was ineffective in failing to ensure that Mr. Kumar received the aid of an interpreter as envisioned by due process and federal statute, 28 U.S.C. § 1827.[11]

### 4.   The Court's Voluntariness Inquiry was Deliberately Thwarted

The Plea Hearing Transcript contains a lengthy and detailed series of questions by the Court making it clear that the Court wanted to be informed of any side arrangements that might affect the voluntariness of Mr. Kumar's guilty plea:

> **The Court:**         Does this plea agreement set out the entirety of your understanding with the government?
> **The Defendant:**   Yes, Your Honor.
> **The Court:**         So there are no side deals; no one made you any promises that are not in there?
> **The Defendant:**   No.
> **The Court:**         And you didn't make any promises to anybody that are not in here?
> **The Defendant:**   No.
> **The Court:**         Okay. Sometimes – Here's what I'm worried about. It's never happened so far, but what I want to make sure doesn't happen is the parties have a plea agreement and then the government says to somebody on the side, you know, if you sign that plea agreement, we'll do this other thing for you.
> **The Defendant:**   No.
> **The Court:**         There's nothing like that here.
> **The Defendant:**   No. No, Your Honor.
> **The Court:**         Okay.

Plea Hearing Transcript (Bhandari Decl. Ex. 1) at 10:7-25. Astonishingly, despite this lengthy and detailed probing by the Court, neither defense counsel nor the government informed the Court that Mr. Kumar had been assured that his guilty plea would protect his family from prosecution. Prior to the guilty plea, government counsel had spoken to prior counsel Mr. Cannon about this assurance, which conversation Mr. Cannon seems to have understood as a

---

[11] The court record thus indicates that prior counsel never bothered to properly assess Mr. Kumar's English ability, giving reason to believe Mr. Kumar's understanding of the plea agreement and everything else about this case was woefully inadequate.

1   request to have him coach Mr. Kumar to not reveal the assurance during the plea hearing. *See*

2   Bhandari Decl. Ex. 8 (Feb. 17, 2017 email from Mr. Cannon titled "Conversation with Jose")

3   ("He again reaffirmed that while there are no formal promises other than those contained in the

4   plea agreement, once Shiv pleads, the investigation is over and no other cases will be brought.

5   He is just nervous Shiv might say something about that on the record and does not want to be

6   embarrassed. .. So Shiv all of your family members can sleep well at night, just don't mention

7   that at the time of the plea because that consideration is not a part of the formal deal, even though

8   it is certainly part of the practical consideration."). This coaching, which can be interpreted as

9   Mr. Cannon serving the interests of his other clients in having the plea and side deal go forward,

10  prevented the Court from the more searching voluntariness inquiry required when the facts

11  indicate unusual coercion pushing a defendant to plead guilty. Had the Court explored these

12  issues, it could have learned the extent to which Mr. Kumar's guilty plea was propelled by a

13  desire to protect family as opposed to having committed the required acts with the required mens

14  rea. The Court also could have explained that any assurance towards family members was being

15  affirmatively disclaimed in official documents by the government, with the possible result that

16  Mr. Kumar would not have pleaded guilty.

17                                         **V.**

18                    **Government Breaches of the Plea Agreement**

19          Mr. Kumar also suffered ineffective assistance at sentencing as a result of Mr. Cannon's

20  failure to challenge government breaches of the plea agreement at sentencing. In exchange for

21  Mr. Kumar's guilty plea, the government agreed to limit its allegations to unreported API income

22  arising from unreported deposits to two specified accounts in 2009 and 2010, which deposits the

23  government totaled as $4.641 million, for a tax loss of $1.584 million. Plea Agreement (Bhandari

24  Decl. Ex. 3) ¶ 2(d)-(g). Not only does the plea agreement by its terms[12] and as reasonably

25

26          [12]  In construing the terms of a plea agreement, courts follow three main rules.  "First, a
    'hyper-technical reading of the written agreement' and 'a rigidly literal approach in the
27  construction of the language,' should not be accepted. Second, the written agreement should be
    viewed 'against the background of negotiations' and should not be read to 'directly contradict
28  [an] oral understanding.' Third, a plea agreement that is ambiguous 'must be read against the
    government.'" *United States v. Rewis*, 969 F.2d 985, 988 (11th Cir. 1992) (citations omitted);

                                         14              Case No. 4:17-cr-00114-JST
                        MOT. TO CONT. SENT. OR FOR SPECIFIED RELIEF

1    understood by Mr. Kumar[13] so limit the government, but the government itself acknowledged the

2    plea agreement as so limiting it. Bhandari Decl. Ex. 9 (Sept 29, 2017 email from J. Olivera to C.

3    Cannon re: USA v. Kumar: Analysis) (stating that if Mr. Kumar would "open up those years" if

4    he pointed out that 2008 and 2011's returns reported part of what the government claimed was

5    unreported in 2009 and 2010, and that he was ignoring that the plea agreement provided "that

6    benefit" of excluding 2008 and 2011).[14]

7            Yet, whether intending to breach or not,[15] the government went outside these

8    acknowledged limits on two occasions. First, in its June 2017 sentencing papers, the government

9    alleged Mr. Kumar "did not come clean" in amending API's 2009 and 2010 tax returns in 2012

10   but instead "doubled down on his fraud" by trying to hide "nearly 2 million dollars" in revenue.

11   *See* Govt. Sent. Mem. (ECF No. 12) at 5-6. Second, in October 2017, the government alleged

12   that API's 2008 gross receipts were underreported by $520,995.04, and that this should be used

13   to support tax loss findings under the Sentencing Guidelines as well as restitution. U.S. Supp.

14   Sent. Mem. (ECF No. 17) at 7. Even though the government's allegations were not only grossly

15   inaccurate (as the government acknowledged, *see* ECF No. 17 at 3) but also unsupported by

16   either logic or evidence (as explained below), when threatened with the pulling of the plea

17

18

19   _____

20   *United States v. De La Fuente,* 8 F.3d 1333, 1337 (9th Cir. 1993). The plea agreement in this
     case clearly reflects charge bargaining down to one count for specified conduct.

21      [13]  *De La Fuente,* 8 F.3d at 1337 (construction of plea agreement driven by "what the
     defendant reasonably understood to be the terms of the agreement when he pleaded guilty");
22   *Rewis*, 969 F.2d at 988 ("If we do not enforce [Defendant's] reasonable understanding of the
     plea agreement, he cannot be said to have been aware of the consequences of his guilty plea.").

23

24      [14]  An attempt by the government to rely on a general duty to provide relevant
     information, *cf.* Plea Agreement ¶ 8 (the government "may and will provide the Court and the
     Probation Office with all information relevant to the charged offense and the sentencing
25   decision"), would fail not only because of the many cases interpreting such statements as
     trumped by agreements to specific conduct, *see United States v. Lara*, 690 F.3d 1079, 1082-83
26   (8th Cir. 2012) (gathering cases), but also given the government's own understanding of its
     limitations.

27

28      [15]  Mr. Kumar makes no allegation that the government breached intentionally; whether it
     intended to breach is irrelevant. *United States v. Manzo*, 675 F.3d 1204, 1213 (9th Cir. 2012).

1  agreement which would also pull the side deal benefitting his other clients,[16] Mr. Kumar's

2  conflicted counsel stipulated to the government's arguments[17] and never raised the breach. Only

3  through its breach was the government able to generate $1.5m in tax loss (*see* ECF No. 17 at 3),

4  which finding improperly anchored[18] the Court's sentencing decisions. Prior conflicted counsel

5  should have objected and sought an appropriate remedy, such as rescission or specific

6  performance.

**VI.**

**Improper Sentencing Arguments**

9  In its June 2017 sentencing memorandum, the government made the following additional

10  claims about API's 2009 and 2010 amended tax returns:

> Even after the IRS initiated a civil audit, Mr. Kumar did not come clean on API's
> gross receipts. Rather, he submitted false 2009 and 2010 amended tax returns in
> 2012 to the IRS that underreported API's gross receipts for both 2009 and 2010
> by a sum of nearly $2 million dollars… While Mr. Kumar may have no criminal
> history, he engaged in an elaborate and deceitful practice for more than three
> years. This factor, given the longevity of Mr. Kumar's crime, weighs in favor of a
> significant term of incarceration.

15  ECF No. 12 at 5. The government attributed intent and responsibility to Mr. Kumar, claiming

16  that Mr. Kumar acted out of "greed," decided to "double down" on tax fraud, and intentionally

---

[16]  *See* Bhandari Decl. Ex. 9 (Sept 29, 2017 email from J. Olivera to C. Cannon re: USA v. Kumar: Analysis) (ominously warning: "I have tried to be patient with [Mr. Kumar], but at this point I don't know how he can say he isn't going to be violating the plea agreement.").

[17] Mr. Kumar hereby disavows each and every sentencing-related statement or agreement of prior, conflicted counsel.

[18] *See United States v. Navarro*, 817 F.3d 494, 501-02 (7th Cir. 2015) ("The improper upper guidelines number offered by the government may well have anchored the district judge to an inflated sentencing range. We conclude that, had the government's initial recommendation started at a lower point, Navarro likely would have received a lower sentence. *See United States v. Ingram*, 721 F.3d 35, 40 (2d Cir. 2013) (Calabresi, J., concurring) (discussing how "anchoring effects" influence judgments and noting that the court "cannot be confident that judges who begin" at a higher guidelines range "would end up reaching the same 'appropriate' sentence they would have reached" if they started from a lower guidelines range); *see also* Hon. Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Spot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 492 (2014) (discussing the "potential robust and powerful anchoring effect" of the sentencing guidelines and "the effect of the 'bias blind spot' in determining just sentences"); Amos Tversky & Daniel Kahneman, *Judgment Under Uncertainty: Heuristics and Biases*, 185 Science 1124, 1124 (1974) (classic theoretical work on how framing and expectations influence judgment).").

MOT. TO CONT. SENT. OR FOR SPECIFIED RELIEF

did not "come clean" to the tune of nearly $2 million. *Id.* at 5-6. The government has now admitted that it was significantly wrong about the numbers, ECF No. 17 at 3:21-26 (admitting only $258,000 of its originally claimed $2m in discrepancies survived analysis),[19] but was never challenged by prior conflicted counsel to support its allegations. Even if there was no plea agreement bar to raising 2008 and 2012 acts, for it to be relevant conduct for sentencing, the government must prove the wrongful acts by at least a preponderance of the evidence. *United States v. Whitecotton*, 142 F.3d 1194, 1197 (9th Cir. 1998). For example, in a drug case, to argue sentencing should include transactions beyond those stipulated in the plea, the government must prove that defendant committed those acts with a culpable mental state. *Id.* at 1198-99 (reversing where government failed to show additional drug sales were jointly undertaken by defendant). In this tax case, to argue that Mr. Kumar "doubled down" on fraud in 2012, the government must show that Mr. Kumar caused any 2012 misstatements, and that he caused them "willfully," i.e., with culpable intent as opposed to by mistake. The government's filing offered no evidence that Mr. Kumar caused any 2012 misstatements, and no evidence about Mr. Kumar's mental state with respect to those returns, including whether he even knew in 2017 of any misstatements. (The PSR can provide the government no aid here: it merely notes that the amended returns contained errors, but it attributes no responsibility or intent to this. PSR ¶ 9.)  Furthermore, as the government is aware, the 2012 amended tax returns were prepared by new accountants directed by tax attorney Dewey Watson. *See* Bhandari Decl. Ex. 7. Clearly, any error in the work of these new accountants brought in by the tax attorney would likely be an innocent mistake by outside professionals, not something attributable to Mr. Kumar.[20]

---

[19]  In its supplemental sentencing memorandum, the Government admitted: "Lastly, the Government was incorrect in its sentencing memorandum that API's amended U.S. Corporation Income Tax Returns for 2009 and 2010 underreported API's gross income by nearly $2 million. The underreported amount was substantially less.  Still, even after accepting Defendant's arguments and accounting for all amounts, Defendant still underreported, whether intentionally or not, API's gross receipts/income on its amended tax returns for 2009 (by approximately $154,000) and for 2010 (by approximately $104,000)."

[20] In the end, the government seems to have conceded the lack of evidence that Mr. Kumar willfully caused any misstatements in 2012. ECF No. 17 at 3:24 ("Defendant still underreported [API's gross receipts], *whether intentionally or not*.") (emphasis added).

1    Similarly, prior conflicted counsel failed to challenge the government's allegations about

2    2008.  This was the case, even though the government had not offered any evidence either that

3    Mr. Kumar caused any misreporting in 2008 or regarding his mental state. Again, the allegations

4    in the plea agreement and PSR also do not include any admissions or findings that Mr. Kumar

5    culpably caused or even knew about any misreporting for 2008. Furthermore, as a legal matter, it

6    was incorrect for the government to offer 2008 as a basis for restitution calculations, for the plea

7    agreement does not include any agreement that 2008 conduct would be a basis for restitution.

8    Restitution in this case is permitted only because of and to the extent of the parties' agreement in

9    the plea agreement – there is no independent statutory basis for restitution.[21] Anything beyond

10    the plea agreement is thus also beyond the Court's ability to order. None of this was raised by

11    prior conflicted counsel.

### VII.

### CONCLUSION

14    For the reasons stated above, Mr. Kumar asks that the Court continue this matter to allow

15    proper investigation and briefing of the serious constitutional violations and other problems

16    outlined herein, including authorizing Rule 17 subpoenas returnable prior to the next hearing and

17    setting a substantive hearing date approximately four months out. Alternatively, if the Court

18    declines to grant a continuance, Mr. Kumar asks that the Court grant the relief specified herein as

19    a result of the ineffective assistance of prior conflicted counsel, specifically: (1) striking the

20    Court's prior sentencing determinations and prior defense counsel's filings; (2) finding the

21    March 24, 2017 plea to be unknowing and/or involuntary and ordering further briefing on the

22    effects; (3) finding the government in breach of the plea agreement and ordering further briefing

---

[21] Criminal restitution in tax cases was not envisioned by Congress. *See* 18 U.S.C. §§ 3663 and 3663A (providing for restitution in Title 18 offenses, and some Title 21 and Title 49 offenses, but no Title 26 offenses). Given that a civil assessment process is available to the government to recover not only tax loss but also fines and penalties, it is unnecessary and repetitive to deal with IRS monetary claims in criminal restitution. However, the government likes to force tax defendants to stipulate to criminal restitution using the portion of section 3663 that allows restitution by agreement of the parties, as it did in this case. Where that is true, criminal restitution may be ordered, but only in accord with the parties' agreement.

on remedy; (4) rejecting as unproven (and outside statutory authority) the government's attempts to bring in 2008 and 2012, focusing the parties on the agreed years of 2009 and 2010.

Dated:  November 15, 2017                     McNamara Smith LLP


                                              By:    /s/ Sanjay Bhandari
                                                     Attorneys for Shiv D. Kumar

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of November, 2017, the foregoing document

(**Motion to Continue Sentencing, or in the Alternative, for Specified Relief**) was

electronically transmitted to the Clerk's Office using the CM/ECF System for filing, and for

transmittal of a Notice of Electronic Filing to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system.


/s/ Sanjay Bhandari
Sanjay Bhandari