Sanjay Bhandari (Cal. Bar No. 181920)
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401
Email:  sbhandari@mcnamarallp.com

*Attorneys for Shiv D. Kumar*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:17-cr-00114-JST |
| Plaintiff, | **DECLARATION OF SANJAY BHANDARI IN SUPPORT OF MOTION TO CONTINUE SENTENCING, OR IN THE ALTERNATIVE, FOR SPECIFIED RELIEF** |
| v. | |
| SHIV D. KUMAR, | |
| Defendant. | JUDGE:  Hon. Jon S. Tigar<br>CTRM:   3, 3rd Fl. (Oakland)<br>DATE:   November 17, 2017<br>TIME:   9:30 a.m. |

I, Sanjay Bhandari, hereby declare as follows:

1. I am an attorney at McNamara Smith LLP, and counsel of record for Defendant Shiv D. Kumar in this action. I am a member in good standing of the State Bar of California and the bar of this Court. I make this declaration of my own personal knowledge, except where expressly stated otherwise. For example, some facts are expressly offered as proffers of what I believe government counsel would not contest. If called as a witness, I could and would competently testify to the facts stated herein under oath. I attach true and correct copies of the following documents as exhibits:

| Ex. # | Description |
|---|---|
| 1 | Certified Transcript of the March 24, 2017 Rule 11 Hearing (in Court file) |
| 2 | Certified Transcript of the October 6, 2017 Sentencing Hearing (in Court file) |
| 3 | Plea Agreement (in Court file) |
| 4 | August 10, 2016 Email from AUSA Olivera to Mr. Patton (produced by Mr. Patton to me) |
| 5 | August 15, 2016 Engagement Agreement and Conflict Waiver b/w Chris Cannon and Reena and Sandeep Kumar (produced by Mr. Cannon to me) |
| 6 | Excerpt of Government's Discovery (produced by Mr. Cannon to me) |
| 7 | Excerpt of Government's Discovery (produced by Mr. Cannon to me) |
| 8 | February 17, 2017 Email from Chris Cannon to Shiv Kumar (client copy, redacted to avoid waiver of matters not argued, matching in relevant content an incomplete copy produced by Mr. Cannon to me) |
| 9 | September 29, 2017 email from J. Olivera to C. Cannon (produced by Mr. Cannon to me) |

2. ***Mr. Kumar's Heart Condition***. During the last hearing on October 6, 2017, the Court asked for medical information about Mr. Kumar's heart condition, in light of the medical emergency that halted the proceedings. Rather than seeking to authenticate and admit sufficient portions of the several hundred pages of sensitive medical records I have reviewed from Kaiser Permanente and Mercy Hospital in Sacramento, I hereby proffer the following summary of what

they would establish. *On August 23, 2017*, Mr. Kumar was driving with his son in Sacramento when he suddenly experienced massive pain in his chest. He was taken to Mercy Hospital in an ambulance. Mercy did an angiogram, found blockages, and did angioplasty resulting in implantation of 2 stents. The angiogram showed blockages throughout the blood vessels of his heart, one 99% stenosis/lesion, one 80%, six 70%, some 60%, 40%, 30% , etc. In September and early October 2017 he visited with Kaiser doctors, complained of some discomfort, but had no emergencies. *On October 6, 2017*, after the sentencing hearing was recessed, he was admitted to a Kaiser hospital and kept overnight. The treating cardiologist recommending that Mr. Kumar "probably should have bypass surgery," or "a repeat cardiac catheterization with possible PCI [i.e., angioplasty or stents]." Mr. Kumar asked for more time to discuss future arrangements with his family. He was discharged with instructions to take 30 mg daily of Imdur, a drug that relaxes and widens blood vessels to allow blood to flow more easily to the heart. He was also told to take nitroglycerin when necessary, and continue existing heart medications such as beta-blockers and ACE inhibitors. *On October 11, 2017*, Mr. Kumar was again rushed to the emergency room, where he was found to have chest pains, shortness of breath and dizziness. He underwent a catheterization, during which the cardiologist performed angioplasty and implanted a stent in order to treat a 90% lesion in the proximal ramus intermedius, part of the left main coronary artery. He has seen his cardiologist again since the operation, and was told he has heart disease spread widely throughout his heart, including in many small blood vessels that cannot be treated through angioplasty and/or stents. A bypass operation may end up being required if his symptoms do not get better.

    3.    ***Conflicts History***. I proffer the following facts not from my personal knowledge but based on review of billing records and prior written contacts between the government and prior defense counsel Mr. Patton and Mr. Cannon. I have spoken to AUSA Olivera about these facts and I do not believe them to be contested. On August 8, 2016, government attorneys Jose Olivera and Rebecca Sable met with Shiv Kumar's attorney Roger Patton regarding a criminal investigation that arose from a 2011 IRS audit of Kumar's company A-Paratransit Inc. (API). The government told Mr. Patton it was moving towards bringing charges against Shiv, and that

his daughter Reena, API, and others faced possible prosecution. The government indicated that if Shiv were to plead guilty, the government would likely not proceed to charge the others, and so it proposed a tolling agreement to allow Shiv to consider pleading guilty. *See* Ex. 4. Mr. Patton referred Shiv's daughter Reena and others to Chris Cannon, who prepared a written engagement agreement and conflict waivers dated August 15, 2016 for his representation of Reena Kumar, Sandeep Kumar, and API. Ex. 5. The State Bar website reflects that Mr. Patton is retired, and billing records show he stopped billing for this case in March 2017. At some point before he retired, billing records indicate Mr. Cannon began representing Shiv, and Court records reflect that he represented Shiv as sole counsel of record during sentencing. Mr. Cannon's files as produced to me contain his engagement agreement and waiver with Reena & Sandeep, but no engagement agreement or waiver with Shiv. Mr. Cannon's records reflect no termination of his representation of Reena, Sandeep, or API.

4. ***Mr. Kumar's English Language Ability.*** I have spoken with Mr. Kumar for many hours in person and over the telephone. I have medium proficiency in Mr. Kumar's native languages of Hindi and Punjabi so we can communicate, but in English, I have difficulty understanding Mr. Kumar, and he has difficulty understanding and explaining things to me. The difficulty is relatively small for simple matters, but for complex concepts, the difficulty is so high that I would not proceed without a Punjabi interpreter. I would never have Mr. Kumar sign a complex legal document unless I or someone else could explain it in Hindi or Punjabi to him. Because of my growing unease about Mr. Kumar's English ability, I first had him informally assessed by a court-certified interpreter, who shared my concerns. I then asked an established English teaching center to assess him using standardized testing materials.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed November 15, 2017 in Germany.

By:    /s/ Sanjay Bhandari
        Sanjay Bhandari